Case 17-5743, United States of America v. Daniel Sexton, argument not to exceed 15 minutes per side. Mr. LoSavio, you may proceed for the appellant. Thank you, Madam Clerk. May it please the Court, my colleagues from the U.S. Attorney's Office, I'm Michael LoSavio. I was appointed pursuant to the Criminal Justice Act to represent Mr. Sexton on this appeal out of the Eastern District of Kentucky. I have to say out of the box that the accounting in this case I don't fully understand. I'm only now sort of getting a handle on the personal matters in his case. So I'm going to take ten minutes here on primary and then five minutes if necessary in rebuttal. As best I can tell, Mr. Sexton was leading a productive life up until he was hit about 55. Third marriage fell apart, a warning sign. His father had died either then or a few years before. His mother had cancer and she passed away. His sister died. And then things just changed for him and he began visiting his son out in Los Angeles and he met and hired Mr. Williams to be his CPA. And as best I can tell from the record as it's presented on his plea of guilty and his sentencing, things just went south from there. We preserve all of our issues in this case, a number of them which deal with the procedural unreasonableness of his sentence. But all culminating in what we challenge is whether his sentence for a 65-year-old man who had led an otherwise productive life should have in effect given what is close to a life sentence. He just happened to commit the crimes when he was in his 60s and he defrauded these banks of many millions of dollars. Yes, and he acknowledged he did so and I'm still not sure why. And again, the accounting is important because I don't see any trail as to how much of an advantage he got from that. Basically the testimony seemed to be that he was getting $3,000 a week, but even at that we're talking that's only $600,000 out of a final loss calculation of around $2.5 million. So again, I could be missing something, but the numbers don't seem to add up. What issues do you have on appeal? You're presenting a sympathetic case, but you really have to have particular appellate issues. Yes, and first and foremost, what hammered him into the ground was that he had a NOLA contendary plea entered in 2005 in California involving some domestic relations matter. No sentence was ever rendered in that case, so in effect there is no judgment and sentence. There is no conviction, yet. Certainly there is a conviction. It was just a suspended sentence. There was no sentence. He suspended entering the sentence on him, so there never is a judgment issued, a final judgment that can be counted. I'll be interested. I mean, that's not my understanding. A final judgment is a technical thing that the court enters when the trial court is done. My understanding is there was a judgment which had a conviction. It had a suspended sentence, and I believe it had probation for a period of time. It was a judgment. The court concluded its work in that matter. He entered a NOLA plea. The court said, okay, I may find you culpable here, but the case isn't over. The case is over when a final judgment and sentence is entered. It's that way under federal rules. It's that way under state California rules. That's why if something is on appeal, we may not say it's a final judgment in some cases. Did his trial lawyer, to your knowledge, argue in the district court that there was no judgment entered in the California matter? He argued that there was no conviction in this case. The guidelines talk about a prior conviction where a sentence has been entered. I mean, if the argument is there was not a piece of paper called a judgment, that's something that really should have been raised and fleshed out at the district court. Well, I believe his trial attorney did, in fact, raise that, saying, look, this was a case where he enters his NOLA plea, nothing happens. We suspend any final sentencing here for this 24-month period, and then on a motion to dismiss, the case is dismissed. Probation counts as a sentence under the guidelines, correct? Yes, but probation after there has been a final judgment and conviction. That was never entered here. This was all put in a form of abeyance. And then when you have the dismissal of the case, it is as if it never existed. What happened here, the probation office is trying to second-guess what may have been on the minds of Mr. Sexton, his attorney, the prosecutor, and the judge in this case. What is the order that was entered by the California court disposing of the matter, although on a tentative basis, whatever the basis, that was not a judgment? Did you present that before? That was not presented before the district court, the argument you're making in that regard, is that right? I believe it was. when that was filed. So there was only one final judgment in that case, and that was the order of dismissal. Why isn't this within the provision of the sentencing guidelines for a 1.2f on diversionary dispositions, which says, a diversionary disposition resulting from a finding or admission of guilt or a plea of no low contendery in a judicial proceeding is counted as a sentence under 4A1.1c, even if a conviction is not formally entered? Then in that case, we'd argue, and this goes back to our final discussion about issues with how or where the sentencing commission comes up with these statements, but this is a binary determination. We say he is as responsible here as if he had been convicted after a trial of this offense. But we don't know. There is nothing in the record which shows why this was being done, why they decided, we're not going to punish you for this. We're going to let this sit here and just make sure that you don't do anything bad in two years, and then we'll get rid of it. How does that make a difference for our purposes that the court didn't further explain the basis for this? He's given a criminal history point. His criminal history is increased, which will increase his potential punishment under 3553. Why? We need adequate just punishment. Do we have proper deterrence? Do we rehabilitate this individual? But if you treat all these cases the same, then you're not looking at the individual justice that 3553 also requires for an individual. What are his circumstances, and what is it about this case that requires this kind of punishment? Well, now you're making an argument that goes to procedural or substantive unreasonableness, aren't you, which is a little bit different than the points you were addressing a moment ago. Yes, in that I'm trying to, I guess, normalize what is appropriate in terms of punishing Mr. Sexton for this Fargo Act, that the trial court itself said, we're going to dismiss this. But the guidelines say you can do that. I mean, Judge Moore read 4.A12F. The pre-sentence report refers to that. I mean, the guidelines say you get yourself in a position where you've got some kind of suspended sentence. I mean, the very position he's in, NOLO, contendere, whatever it is, you're not like the average person on the street. Most people don't end up in that situation. The guidelines take that situation into account. Do all people that end up in that situation, are they all guilty of an offense, of a crime? Are we treating him justly, looking at the other end of the country, looking back 15 years? Guidelines think so, apparently. Which comes down to what has often been questioned about the guidelines, substantive reasonableness. And this really is something that's going to be developed at the trial court level. Substantive reasonableness looks at, are you placing undue emphasis on any particular factor? The point here is, by placing this unreasonable weight on this guideline's pronouncement, without looking at the factors that go into it, by treating him as bad as if he'd hit somebody in the head, is not reasonable, it's not just. And thus, he shouldn't have had those extra criminal history points. Thank you. Thank you. May it please the Court, Dmitry Slavin for the United States. The California plea, Mr. Sexton entered a plea, a judgment guilty based on that plea. There was a suspended sentence, that was to 24 months of probation, and there's a form that was attached. It's in the record in this case, it was attached to the pre-sentence report, and it lists the punishment, which is 24 months of summary probation. That's a conviction. Whether under 4A1.283 or under 4A1.2F as a diversionary disposition, either way, it counts as a prior sentence. But it was wiped out, right? It was wiped out eventually, Judge Moore, after he completed his probation and he was allowed to withdraw his plea. Actually, that didn't happen until after he began the conduct in this case. He began the conduct in 2007. He was allowed to withdraw his plea after his probation finished in 2008. So this kind of a situation counts just the same as if he had been sentenced to two years in prison? Is that right? Yes, Your Honor, under the guidelines. And then you can certainly argue, a defendant would certainly argue to the district court that the defendant's criminal history isn't adequately reflected by a category. And the district judge, of course, has the opportunity then, if the district court finds it merited, to go up or down depending on what the actual context is. But to properly calculate the guidelines range, it has to be counted. And then the only other thing I want to bring up is this 3K, a weak number that comes up in the brief. That 3K does not count the many other things, places where this money went. And that's all in the record. Ms. Flynn testified to it during the sentencing. He bought houses for people. He had a plane. He would do these trips to California where he would take 25 grand with him and take it in cash. There was a lot of money here. These $8 million that was distributed to these conspirators went somewhere. Most of it went, pretty much all of it went to Mr. Sexton. The other three co-conspirators took actually very little at home. It all went into the businesses that Sexton and Williams owned, and then Sexton used those businesses essentially as his bank accounts. So did it not go to Williams also? It went to businesses that Williams owned. Williams did not draw from those businesses as much as Sexton did, so he actually didn't end up with much of the money in cash. He had access to it because it was in the businesses. I'm concerned about the forfeiture aspect and the implications of the Supreme Court's honey cut decision. Why shouldn't that decision apply here and we remand for a determination by the district court of what assets Sexton actually had control over in order to decide the amount of forfeiture? This sentencing actually took place two weeks after the honey cut decision came down. But no one mentioned honey cut so far as I could tell. What we did in that case, some of the co-conspirators had been sentenced before honey cut came down. Once honey cut came down, we actually moved to amend the forfeiture judgment. But did you move to amend Sexton's forfeiture judgment? We did not, but Sexton's forfeiture judgment is actually not joint in several. Joint in several is not anywhere in this judgment. Only the restitution portion of the judgment is joint in several, which honey cut did not address. So the judgment, I'm looking at page ID 722, which is the judgment, and it talks about the forfeiture being $2.5 million and the restitution is $2.6 million. How did you get the $2.5 million forfeiture for Sexton? And I don't want tiny details, but just in general, how did you reach that? Judge Moore, the forfeiture judgment that was agreed upon in the plea agreement came from what was the loss amount that the banks took at the time that the plea was reached, which actually was less than the proceeds because some of that money had been reobtained by the banks through selling of collateral and such. And so actually it was generous, if anything, to Mr. Sexton because it wasn't the total proceeds that he and his business obtained. It was actually the loss amount that the banks took. But isn't that contrary to honey cut if the district judge didn't make a determination or findings as to what part of that forfeiture was limited to the amount this defendant, Mr. Sexton, actually received? So just to assure that he wouldn't wind up paying the entire amount without reference to Mr. Williams. Judge Gray, the district court didn't make detailed factual findings on the forfeiture because it was agreed upon amount that was never challenged. No, but if there's an agreed upon agreement between the government and the defense that's contrary to honey cut, we would still have a problem on appeal and on the plain error, wouldn't we? Certainly, yes. However, in this case, there is no error because at the time, having the benefit of honey cut already being decided, Judge Reeves looked at when he instituted his forfeiture order, he had that information in front of him, and all of the funds in this case went to Sexton. This is a very different case than someone who receives a salary like Mr. Honeycut did. Where is it indicated that all of the funds went to Sexton? I've been trying to look at these documents this morning, so I really don't see how you get to the amount of $2.5 million for Sexton alone under the honey cut decision. Judge Moore, the details of all of the specific amounts and the loans and where they went were all in the pre-sentence report, and it's a very convoluted story. So it's the pre-sentence report that you rely on for Sexton having received, obtained under the honey cut statute language. Yes, Your Honor, and Judge Reeves adopted the pre-sentence report during the sentencing, and all of the money went to either Sexton personally or to his businesses. A lot of these were straw loans, so they initially didn't have his name on it, but they were all meant for him and his businesses. My understanding of the judgment is that it says that Sexton forfeits all property listed in the forfeiture allegation of the indictment. So I was going back to the indictment since that's what the judgment seems to be going back to, and the indictment refers then to all the previous paragraphs in the indictment which list things and list Sexton, Williams, and Tobin, or Sexton and Williams. And so there we don't have a clue who would be getting the money involved. Your Honor, the money all ended up in a business. It is a tricky situation because it's a case where you have Sexton and Williams as the two co-owners of these businesses. Sexton either owned or co-owned each of the businesses. Of course, some of the money is clearly going to Sexton in that it's going to fund his condos, his various houses. Some of the money went to businesses, and those businesses were co-owned by both Sexton and Williams. And that's not a situation that Honeycutt dealt with where it was a business owner who had access to. And then the question becomes how do you divide money that is obtained, fraudulently, by a business that is owned by multiple people. And yet on Tobin, apparently you felt that there wasn't enough tracing with regards to his forfeiture. Well, Your Honor, Tobin worked for the bank. So he got some kickbacks from Williams and Sexton, but he didn't actually obtain any of the money. None of the money was going to him. So then in this amended forfeiture order, which was filed subsequent to the judgment that I was reading from, in the amended forfeiture order, Sexton is tagged with $2.5 million and Williams is tagged with $2.3 million. It's not the same? It's not. It just happens that they each are pretty close to $2.5 million? Well, Your Honor, it's a trick situation, again, because they co-owned the businesses. If anything, Mr. Williams might have an argument that he is being overcredited because he wasn't actually drawing from the businesses and Sexton was. But it's a question that Honeycutt doesn't address. What happens when the money is actually taken in by a business and multiple people have ownership stake in the business? Does the government then need to specifically prove how much? If they all had access to all of the money and they were just withdrawing it. Isn't that then joint and several liability? I don't know if it's... We, the government, can't prove it, so we're going to give you each $2.5 million that you forfeit, meaning you have to give to the government. So it's not like the restitution where it was actually stated to be joint and several. I don't know if it's quite joint and several liability. It's forfeiting the profits that the business made, and since they're both owners, I can see the similarity. I'm just, to be honest, not sure what the answer is under Honeycutt when it is a business that's owned by multiple people. But I think in this case where Sexton is clearly the only one who was drawing on this business as a bank account, this is not the case to answer that question.  He was drawing off these businesses. They were all... He had ownership interest in them. He has access to that money to then forfeit it. It's not a case where he's being asked, like Mr. Honeycutt, to forfeit money that he never had, that he never obtained. But you agree that the Honeycutt decision principle is applicable to this forfeiture. It's just a question of how does it apply to Sexton himself. I'm not sure. It's not squarely applicable. If you look at Justice Sotomayor's example of the college student that she used in Honeycutt, that's where the college student was being paid $3,000 and would have been held responsible for the $3 million that the big dealer that he was working for would have obtained. And that college student never had access to $3 million. It would have required him to forfeit clean money to make up that amount. That's not the case here. Yeah, but that's because of the particulars. What I'm getting at is at least based on the court's amended order of forfeiture, Honeycutt is cited as being applicable. And I was just clarifying that that's what the government's position was in this case. It may be applicable to a business. It's certainly applicable to the folks in this case who are receiving salaries and not— What I'm getting at is is it applicable to the statute that's involved here? It is applicable to that statute because the language of the statute is the same. Which statute are we relying on here? The forfeiture statute, and I don't have the specific statute in front of me, but the forfeiture statute that we used to obtain funds from this fraud, the purchase of this fraud, is the same language as the drug statute that was in Honeycutt. That's what I was wondering, which forfeiture statute? I don't have that in front of me. The language is the same, so it would certainly apply, yes. Am I correct in understanding that he affirmatively represented to the district court that this was the correct forfeiture number? Is that right? Or am I mistaken? He agreed in his pre-agreement that that was the right forfeiture number. Did he ever revoke that representation in any way? No, Your Honor, he did not challenge in any way that forfeiture number until— Why isn't this just outright waived, no pun intended, as opposed to forfeited? I mean, if you tell the—it's one thing if you don't raise an argument. It's another thing if you affirmatively tell the district court X is true. At that point, they can't argue here, even on plain error review, X. I would agree with that, Judge Kovach. And this is one-third of the loan proceeds, less than one-third, right? Yes, sir. The total amount disbursed was $8 million. And it was—he took $624,000 in these $3,000 a week payments, right? I don't know what those exact numbers are, but the money went to a lot of different places. So it would have to be about another $1.8 or something in, you know, the planes, the cash, the houses, Bahamas, et cetera? Yes, Your Honor. Okay. It was a lot of money. Ms. Flynn testified at sentencing that at one point when the businesses were looking at bankruptcy and properties were about to be—and loans were about to be foreclosed upon by the banks, he took $25,000 in cash just out of the drawer in the trailer homes and flew to California and spent it. When you look at the plea agreement, what exactly did he plead on the forfeiture? In paragraph 10 of my reading, he defended will forfeit to the United States all interest in the property listed in the forfeiture allegation of the indictment. So we go back again to the document that I was referring to. And then it says defendant also agrees to the imposition of a money judgment in the amount of $2.5 million, which was the amount of restitution listed above in paragraph 5. So is that money judgment the restitution amount as opposed to the forfeiture amount? That judgment is the forfeiture amount, and it repeats the plea agreement— it says the same thing twice to make sure that it is completely clear to the defendant that he is agreeing to this specific money judgment. Any further questions? Well, of course the amount ordered by the district court for Sessom and Williams combined exceeds the loss amount. Can the—why is it proper for the district court to order an amount for forfeiture that exceeds the loss amount? If we look at the statute in Huntington, we know that we're not supposed to— other than the amount for which the defendant individually actually received. The loss amount is offset by the banks getting paid back, by the banks getting some of this property and selling it. The forfeiture statute refers to proceeds of the crime, which is different than the loss. But even that wouldn't explain it if the judge ordered an amount equal to double the loss amount, which apparently is, if you combine the two, is what occurred. The total amount that was taken in from the banks is $8 million. So even—so adding those two forfeiture, you're still short of the total amount of proceeds. The banks were able to mitigate their losses quite a bit, because there were a lot of properties that they were able to obtain and sell off. But the amount actually disbursed was $8 million. Well, that would be more supportive of the point I'm making, wouldn't it, that if the amount was mitigated, then that would enhance the excessive nature of the amount that was ordered. I don't—Judge Gray, I don't think that mitigation is relevant to the forfeiture calculation, because the forfeiture statute talks about proceeds. It doesn't talk about loss. Certainly if you compare it to a drug case, there is no monetary loss, but there are proceeds, and you're forfeiting those proceeds. All right. I think we have your argument in hand. Thank you very much. Just real quick, the California document is at page ID 763, and it notes in writing at the bottom, you know, if this goes okay, we'll dismiss. So again, we contend no juridical effect as to the forfeiture argument. We addressed the waiver on page 32 of our brief, and this court said in the United States v. Ferguson, if you waive it, you're out of luck, except where the sentence is imposed in excess of statute. And here it's pretty clear, even under Honeycutt, this is imposed in excess of statute. In the amended judgment on Tobin's motion, okay, so we set aside your forfeiture, but still ordered Sexton at $2.5 million and Williams at $2.3 million, in excess of what the loss is, what these proceeds are. Part of the problem is there is nothing here which, and I think in part because they all agreed to this stuff, there's no clear accounting of what was being done anywhere. Well, Ferguson is talking about a statutory maximum, like years in prison. You know, the max is 20 and you've got 30. It's not talking about a situation where it comes to us with, you know, a representation by the defendant who knows better than anybody else what the numbers are, that it's a specific number. The district court is told it's that specific number. It comes up here, basically, you know, the papers are sort of dumped on the desk, and it's like there's an error in there somewhere. I don't think Ferguson was talking about that. It's talking about will you let a court issue an illegal judgment. That's what this is. Frankly, you just haven't shown it was illegal. Anyway, I mean. Honeycutt establishes what the forfeiture order should have been. This was clearly not established in the court's order. Why is Honeycutt applicable to this statute? And what was the statute that the forfeiture was ordered under? I apologize. I'd have to look it up. Yeah, but, you know, for both of you, I would think that this would be something that you would know because Honeycutt is applying a particular statutory language, and we need to know whether our statute that's involved here has the same language. And I think that there are several possibilities here. One is 981, and one is 982, and they have different language. And that's why I was interested as to what you thought was involved here. In any event, both of you. I'm sorry. I cited. Okay. So in Honeycutt, they were applying 21 U.S.C. 853. Right. This applies to the statute under which Sexton was ordered to forfeit the proceeds, 18 U.S.C. 981A, which prohibits a joint in several approach similarly. 981A does not have the language in it, I don't think, any proceeds the person obtained directly or indirectly. Instead, 981A1C says any property which constitutes or is derived from proceeds traceable to a violation. The only court that I found that addressed this was the Third Circuit in United States v. Jelly. Third Circuit 2017, I didn't have enough third cite for it, but also they followed up on an unpublished case, U.S. v. Brown, case number 15-1505, which held that Jelly and Honeycutt applied to an 18 U.S.C. 981 forfeiture assessments in a mortgage fraud scheme like Sexton's. So at least the only court that I know to have addressed this has said yes, it applies over. I mean, you made a good point. We contend the Honeycutt decision equally applies in this case. Because 982 does seem to use the word proceeds the person obtained directly or indirectly in 982A2. And the interesting thing to me was that the indictment cited both 981A1C and 982A2A. So it's citing the two different statutes with two different kinds of language. And then the judgment refers to the forfeiture allegation of the indictment. So maybe that means that both are involved. But there's somewhere else where it looked like it was only 981 as opposed to 982. So that is in the amended order of forfeiture from the district court. So it is an interesting conundrum, and we've used up your time. So thank you. Thank you. Mr. Sexton, there was a note that he had all these other businesses that were generating huge cash flow. So I don't know what the numbers are. Thank you. I understand that you've been appointed pursuant to the Criminal Justice Act, and we thank you for your service. And thank you both for your argument. The case will be submitted. And would the clerk call the next case, please.